IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 02-17075-AIH |
| | ) | |
| JOHN M. SCHOHL, et al., | ) | Adversary Proceeding 03-1396 |
| | ) | |
| Debtors. | ) | |
| | ) | Bankruptcy Judge Arthur I. Harris |
| | ) | |
| MARVIN A. SICHERMAN, Trustee in | ) | Case No. 1:02-CV-02454 |
| Bankruptcy, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Ann Aldrich |
| | ) | |
| v. | ) | Magistrate Judge David S. Perelman |
| | ) | |
| JOHN F. MACKIN., et al., | ) | |
| | ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |
| | ) | |

This case was originally an adversary proceeding before the Bankruptcy Court, but the reference was withdrawn pursuant to 28 U.S.C. § 157(d). Before the court are cross-motions for summary judgment filed by debtors John Schohl and Bridget Schohl ("Debtors" or the "Schohls") [Docket No. 20] and by plaintiff/bankruptcy trustee Marvin Sicherman ("Sicherman" or the "Trustee") [Docket No. 23]. For the following reasons, the court denies the Trustee's motion for summary judgment and grants the Debtors' motion for summary judgment.

## I. Background

The material facts in this case are essentially undisputed. The Schohls, who filed the underlying bankruptcy petition in July 2002, sold their house in Brecksville (the "Brecksville property") to Bridget Schohl's parents, defendants John Mackin and Mary Mackin (the "Mackins") on March 3, 2002 in an

attempt to stave off bankruptcy. Bridget Schohl's business had previously filed for bankruptcy, and the Schohls were behind in mortgage payments for the Brecksville property. The Mackins took out a mortgage and purchased the Brecksville property from the Schohls for $225,000. The property had been previously appraised at approximately $240,000. At the same time the Brecksville property was sold to the Mackins, the Schohls and the Mackins executed a lease agreement that allowed the Schohls to remain in possession of the Brecksville property, while paying a $3,700 security deposit and $11,100 for six months' prepaid rent (at a rate of $1,850 per month). The Schohls used the proceeds from the sale of the house to pay off their mortgage, which had gone into foreclosure.

The Trustee alleges that these transactions were fraudulent transfers and may thus be avoided under the Bankruptcy Code. Initially, the Trustee sought either recovery of the total value of the Brecksville property -- $240,000 -- from the Mackins, or the difference between the appraised value of the Brecksville property and the amount paid by the Mackins for it -- $29,800. Now, the Trustee apparently seeks only the difference between the appraised value and the price paid by the Mackins, along with the security deposit and prepaid rent paid by the Schohls to the Mackins. The Trustee alleges that the combined sale and leasing of the Brecksville property amounted to a fraudulent discount in the price of the home and an attempt to hide assets in the amount of the security deposit plus the six months' prepaid rent, so that the estate should receive the benefit of those allegedly fraudulent transfers -- $15,000 for sale of the Brecksville property for the amount below the appraised value, plus the $3,700 security deposit and $11,100 in prepaid rent. The Schohls counterclaimed, seeking a declaration 1) that the security deposit and prepaid rent were assets exempted from creditors; 2) that because they lived in the Brecksville property from March 1, 2002 through August 31, 2002, the rent prepaid to the Mackins now belongs to the Mackins; and 3) that the sale of the Brecksville property was proper. The Mackins

-2-

filed a cross-claim, seeking rent from the Schohls if judgment was entered in favor of the Trustee on his fraudulent transfer claims.

## II. Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel,* 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.,* 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether

-3-

the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case, the Trustee alleges that the transfer of $14,800 for security deposit and six months' prepaid rent by the Schohls to the Mackins was part of the fraudulent transfer, and that the $15,000 "discount" in purchase price given by the Schohls to the Mackins was the other part of the fraudulent transfer. Under both the Bankruptcy Code and Ohio law, a fraudulent transfer may be established either by showing that the debtor did not receive "reasonably equivalent value" and was insolvent, 11 U.S.C. § 548(a)(1)(B) and OHIO REV. CODE § 1336.04(A)(2), or by showing that the debtor made the transfer with "actual intent to hinder, delay, or defraud" creditors, 11 U.S.C. § 548(a)(1)(A) and OHIO REV. CODE § 1336.04(A)(1). The Trustee alleges that these two transfers are fraudulent under 11 U.S.C. § 548(a)(1)(A) and OHIO REV. CODE § 1336.04(A)(1) because they were made with "actual intent to hinder, delay, or defraud" creditors. In alleging that the transfers were made with actual fraud, the Trustee is not required to demonstrate that the value received by the Schohls was less than "reasonably equivalent value" for what the Schohls gave up. *Id.*

Regarding the $15,000 "discount" to the purchase price of the Brecksville property, the facts are essentially undisputed. A barely legible appraisal for the Brecksville property showed a value of $232,000 based on a cost approach and a value of $240,000 based on a comparison approach, which examined neighboring houses of similar makeup. The professed price paid by the Mackins was $225,000, and the "transfer" was the failure of the Mackins to charge the remaining $15,000 or so of the

-4-

appraised price. However, none of the evidence presented to the court indicates that any such "transfer" was made. In order for the court to proceed on that basis, the court would have to accept the appraisal's figure of $240,000 as an absolute of some sort, such that selling the house for $239,995 would have constituted a "transfer" of $5 to the Mackins. Despite the evidentiary value of the appraisal, the court has found nothing in the case law to indicate that such a position would be warranted or correct.

Instead, the court will "review . . . 'all of the surrounding circumstances to determine whether the transaction is fair.'" *In re Gabor*, 280 B.R. 149, 158 (Bankr. N.D. Ohio 2002) (quoting *John Ownbey Co. v. Comm'r*, 645 F.2d 540, 545 (6th Cir. 1981)). In this case, the Mackins paid $225,000 for property appraised at somewhere between $232,000 and $240,000, depending on the method used. While that transaction is in some sense a bargain, it is not one where "reasonably equivalent value" was not received. In other words, because the Schohls received "reasonably equivalent value" in the form of $225,000 for property appraised at $240,000, the difference between those two amounts is not, as a matter of law, a "transfer" between the Schohls and Mackins.

With regard to the $11,100 in prepaid rent and the $3,700 security deposit (which the Mackins claim they are still holding, to be returned to the Schohls if and when they vacate the Brecksville property), the court will examine the "badges of fraud" listed in OHIO REV. CODE § 1336.04(B) to determine whether the Schohls' transfer of $14,800 to the Mackins was made with "actual intent to hinder, delay, or defraud" creditors. *Gabor*, 280 B.R. at 157-58. Section 1336.04(B) lists eleven "badges" to consider:

> (1) Whether the transfer or obligation was to an insider;
> (2) Whether the debtor retained possession or control of the property transferred after the transfer;
> (3) Whether the transfer or obligation was disclosed or concealed;

-5-

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

OHIO REV. CODE § 1336.04(B)(1)-(11).

After reviewing the undisputed facts, the court determines that the following "badges of fraud" are present: (1) the transfer was made to an insider, as the Mackins are Bridget Schohl's parents; (4) Bridget Schohl's corporation had been sued; and (9) the Schohls were insolvent at the time of the transfer. Because the "property" transferred was $14,800 in cash, it is clear that the Schohls did not retain control or possession of the property even if they still lived in the Brecksville property, since transfer of the Brecksville property is not being challenged. The Schohls disclosed the transaction, $14,800 was not substantially all of the Schohls' assets at the time, the Schohls did not abscond, nor did they remove or conceal assets, and the Schohls did not incur additional substantial debt either shortly before or after the transfer. Most importantly, the Schohls received leasehold tenancy in the Brecksville property for six months in exchange for that $14,800. In other words, the value of consideration received by the Schohls was of "reasonably equivalent value" to what they gave up. For that reason, the court finds that despite the presence of three "badges of fraud" in the transaction, the transfer of $14,800

-6-

to the Mackins was not, as a matter of law, a fraudulent transfer. *Gabor*, 280 B.R. at 157 (citations omitted). The "clear evidence" of the Schohls' "legitimate supervening purpose" -- paying rent to the Mackins so that the sale of the home did not in fact become a fraudulent transfer -- means that the "confluence of several badges" is not "conclusive evidence of fraudulent intent." *Id.* (citations omitted).

Because the court finds that the difference between the appraisal value of the Brecksville property and the purchase price paid is not a "transfer" because the price paid was "reasonably equivalent," and because the court finds that the $14,800 transferred from the Schohls to the Mackins was not made with "actual intent to hinder, delay, or defraud" creditors, the Mackins and Schohls are entitled to judgment as a matter of law on both of the Trustee's claims. The Trustee's motion for summary judgment is therefore denied, and the Debtors' motion for summary judgment is granted. Judgment will be entered in favor of the defendants and Debtors on both counts of the complaint and in favor of Debtors on their counterclaim. As judgment has been entered in defendants' favor on the complaint, defendants' cross-claim is dismissed as moot.

### III.  Conclusion

For the foregoing reasons, the court denies the Trustee's motion for summary judgment [Docket No. 23] and grants the Debtors' motion for summary judgment [Docket No. 20]. Judgment is entered for the Debtors on their counterclaim, and for defendants and Debtors on both of the Trustee's claims in his complaint, making the relief sought by defendants in their cross-claim unnecessary. The case is therefore dismissed.

This order is final and appealable.

IT IS SO ORDERED.

                                     /s/Ann Aldrich
                                    ANN ALDRICH
                                    UNITED STATES DISTRICT JUDGE

**Dated: March 22, 2006**